626 F.2d 995

**COMMONWEALTH OF KENTUCKY ex rel. Robert F. STEPHENS, Attorney General, Petitioner,**

**v.**

**UNITED STATES NUCLEAR REGULATORY COMMISSION and the United States of America, Respondents,**

**Public Service Co. of Indiana, Inc., Save the Valley-Save Marble Hill, State of Indiana, Intervenors.**

No. 78–1369.

United States Court of Appeals, District of Columbia Circuit.

Argued Oct. 17, 1979.

Decided April 18, 1980.

David K. Martin, Asst. Atty. Gen., State of Kentucky, Frankfort, Ky., for petitioner.

William M. Shields, Atty., Nuclear Regulatory Commission, Washington, D. C., a member of the bar of the Supreme Court of Minnesota, pro hac vice by special leave of Court, with whom Stephen F. Eilperin, Sol., Nuclear Regulatory Commission and Neil T. Proto, Atty., Dept. of Justice, Washington, D. C., were on the brief for respondents.

Harry H. Voigt, Washington, D. C., with whom Michael F. McBride, Washington, D. C., was on the brief for intervenor, Public Service Co. of Indiana.

Thomas M. Datillo, Madison, Ind., was on the brief for intervenor, Save the Valley et al.

Michael Schaefer, Asst. Atty. Gen., State of Indiana, Indianapolis, Ind., was on the brief for intervenor, State of Indiana.

Also James A. Fitzgerald, Atty., Nuclear Regulatory Commission, James W. Moorman and Carl Strass, Attys., Department of Justice, Washington, D. C., entered appearances for respondents.

Also Leonard M. Trosten and E. David Doane, Washington, D. C., entered appearances for intervenor, Public Service Co. of Indiana.

Before LEVENTHAL * and ROBB, Circuit Judges, and NICHOLS,** Judge, United States Court of Claims.

Opinion PER CURIAM.

PER CURIAM:

At issue in this case is the location of the boundary between the State of Indiana and the Commonwealth of Kentucky. In the context of a licensing proceeding, the United States Nuclear Regulatory Commission held that the 1792 low-water mark on the northwestern or Indiana side of the Ohio River is the border between the two states. Kentucky, however, contends that its jurisdiction extends to the present low-water mark on the Ohio River's Indiana shore.

This litigation began July 1, 1975 when the Public Service Company of Indiana, Inc., filed with the United States Nuclear Regulatory Commission an application to construct a nuclear power plant to be known as the Marble Hill Nuclear Generating Station, Units 1 and 2 on a bluff immediately west of the Ohio River in Jefferson County, Indiana. From March 8 to May 3, 1977 an Atomic Safety and Licensing Board of the Commission held evidentiary hearings on the application. The State of Indiana and the Commonwealth of Kentucky participated as "interested" states. The dispute over the boundary between the two states arose because section 401(a)(1) of the Federal Water Pollution Control Act, 33 U.S.C. § 1341(a)(1) (Supp.II 1978)[1] requires applicants for a federal permit to construct facilities that may result in a discharge into navigable waters to obtain "a certification from the State in which the discharge originates or will originate." Public Service Co. procured and introduced into evidence at the hearings a certification from the Stream Pollution Control Board of the State of Indiana. This was done on the theory that the Marble Hill Station would

---

* Judge Leventhal participated in the argument in this case but died before the opinion issued.

** Sitting by designation pursuant to 28 U.S.C. § 293(a).

1. 33 U.S.C. § 1341(a)(1) (Supp.II 1978) provides:

(1) Any applicant for a Federal license or permit to conduct any activity including, but not limited to, the construction or operation of facilities, which may result in any discharge into the navigable waters, shall provide the licensing or permitting agency a certification from the State in which the discharge originates or will originate, or, if appropriate, from the interstate water pollution control agency having jurisdiction over the navigable waters at the point where the discharge originates or will originate, that any such discharge will comply with the applicable provisions of sections 1311, 1312, 1313, 1316, and 1317 of this title. In the case of any such activity for which there is not an applicable effluent limitation or other limitation under sections 1311(b) and 1312 of this title, and there is not an applicable standard under sections 1316 and 1317 of this title, the State shall so certify, except that any such certification shall not be deemed to satisfy section 1371(c) of this title. Such State or interstate agency shall establish procedures for public notice in the case of all applications for certification by it and, to the extent it deems appropriate, procedures for public hearings in connection with specific applications. In any case where a State or interstate agency has no authority to give such a certification, such certification shall be from the Administrator. If the State, interstate agency, or Administrator, as the case may be, fails or refuses to act on a request for certification, within a reasonable period of time (which shall not exceed one year) after receipt of such request, the certification requirements of this subsection shall be waived with respect to such Federal application. No license or permit shall be granted until the certification required by this section has been obtained or has been waived as provided in the preceding sentence. No license or permit shall be granted if certification has been denied by the State, interstate agency, or the Administrator, as the case may be.

be built in Indiana and that its effluent would drain into Indiana waters of the Ohio River. Kentucky contended however that the end of the Marble Hill discharge pipe was on the Kentucky side of the border, so that a certification from Kentucky was necessary.

On August 22, 1977 the NRC Licensing Board awarded Public Service Co. a "limited work authorization" to proceed with the building of the Marble Hill plant at its own risk pending issuance of "construction permits". The Board reasoned that the utility possessed a valid certification under section 401(a)(1) of the Federal Water Pollution Control Act "[s]ince the Marble Hill facility will be located in Indiana [and] any discharge from it will originate in Indiana within the meaning of the . . . FWPCA." 6 N.R.C. 294, 337. Kentucky sought a stay of the licensing board's decision pending administrative appeal. The stay was denied by the NRC Appeal Board. 6 N.R.C. 630. On the merits the Appeal Board held that the Kentucky–Indiana border was the low-water mark on the Indiana side of the Ohio River as it was in 1792. 7 N.R.C. 179, 194. The case was remanded for the taking of evidence to establish the location of the 1792 low-water mark. *Id.* at 194–96.

On the basis of the evidence produced on remand the Licensing Board found that the proposed opening of the Marble discharge pipe was above—that is, on the Indiana side of—the 1792 low-water mark. Accordingly the Licensing Board authorized issuance of a construction permit for the Marble Hill facility. 7 N.R.C. 573, 577–82. The Appeal Board affirmed, holding that because the uncontroverted evidence showed the discharge pipe terminated on the Indiana side of the 1792 mark, the Section 401 certification issued by Indiana was valid. 8 N.R.C. 253, 266. Persisting in its contention that the border is the present low-water mark, Kentucky now petitions this court for review.

In *Kentucky v. Indiana*, Original No. 81 (October Term, 1978), a case filed in the Supreme Court pursuant to Article III, Section 2, Clause 2 of the Constitution for the purpose of ascertaining the border between

the two states, the Report of the Special Master recommended that the Court "adjudge . . . that the boundary along the north side of the Ohio River between the Commonwealth of Kentucky and the State of Indiana is the low-water mark on the north side of the Ohio River as it existed in 1792, when Kentucky was admitted into the Union." Report at 21. By Order dated March 24, 1980 the Supreme Court summarily adopted the Special Master's Report, and thus disposed of Kentucky's contention that its jurisdiction extends to the present low-water mark on the Ohio River's Indiana shore. 445 U.S. 941, 100 S.Ct. 1335, 63 L.Ed.2d 774.

Kentucky has not contested the NRC's determination of the location of the 1792 low-water mark at the site of the Marble Hill plant or the NRC's conclusion that the opening for the plant's proposed discharge pipe would lie on the Indiana side of that mark. Therefore, the Commission's final order in ALAB–459 upholding the Licensing Board's grant of a limited work authorization to Public Service Co. for the construction of the Marble Hill Nuclear Generating Station is

*Affirmed.*